UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MELINDA MITCHELL and HARVEY MITCHELL,
individually, and on behalf of a class of all others
similarly situated,

                    Plaintiffs,


           -against-                                                    12 Civ. 2674 (LAK)


THE CITY OF NEW YORK, a municipal entity; New
York City Police Officer JAMES SCHUESSLER, Shield
No. 28718; New York City Police Officer MARK
BRINADZE; New York City Police Captain JOSEPH
GULOTTA; New York City Police Sergeant DANIELLE
ROVENTINI; New York City Police Lieutenant
KATHLEEN CAESAR; New York City Police
Supervisors And Commanders RICHARD ROEs
1-50; New York City Police Officers JOHN DOEs
1-50, individually and in their official capacities,
jointly and severally,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


Appearances:

            Jeffrey A. Rothman
            Jonathan C. Moore
            Jennifer Rolnick Borchetta
            BELDOCK LEVINE & HOFFMAN LLP

            *Attorneys for Plaintiffs*

            Brian C. Francolla
            Erica M. Haber
            NEW YORK CITY LAW DEPARTMENT

            *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

Named plaintiffs Melinda and Harvey Mitchell[1] bring this putative class action against the City of New York and certain named and unnamed police officers, asserting claims for false arrest, malicious prosecution, abuse of process, excessive force, and municipal liability under Section 1983 as well as various state law claims.[2]  Plaintiffs move for partial summary judgment on their false arrest and state law battery claims.  Defendants cross-move for summary judgment dismissing all of plaintiffs' claims.

*Facts[3]*

In or about December 2010, Lieutenant Caesar of the New York City Police Department responded to an incident at 2142 Atlantic Avenue in Brooklyn.[4]  On that occasion, she discovered that the premises at the location appeared abandoned, having little inside other than a bar

---

[1]  Plaintiffs Melinda and Harvey Mitchell are not related.  Rothman Decl. [DI 25], Ex. 1 at 107:5-22 (M. Mitchell Dep.), Ex. 2 at 27:2-14, 52:8-14 (H. Mitchell Dep.).

[2]  Plaintiffs bringing state law claims of this nature in federal court nevertheless must file a timely notice of claim under N.Y. GEN. MUN. L. § 50-e.  *See generally Corcoran v. New York Power Auth.*, 202 F.3d 530, 541 (2d Cir. 1999).  These plaintiffs concededly did not do so.  *See* DI 37.  This failure merits summary judgment dismissing their state law claims.  *E.g.*, *Fincher v. Cnty. of Westchester*, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997); *see also Lipinski v. Cnty. of Broome*, 175 A.D.2d 369, 572 N.Y.S.2d 98, 99 (3d Dep't 1991) (describing the process for moving for leave to file a late notice of claim in state court where plaintiffs have brought their state law claims in federal court).

[3]  Unless otherwise indicated, the facts upon which the Court relies are undisputed.

[4]  Defs' Rule 56.1 Statement [DI 21] ¶ 3; Francolla Decl. [DI 19], Ex. B at 31:23-33:8, 64:23-78:20 (Caesar Dep.).

and a "dance pole area."[5]  Police subsequently made it a point to drive past the house.[6]

At approximately 2:15 a.m. on January 9, 2011, about one month later, Lieutenant Caesar observed three individuals standing on the porch at 2142 Atlantic Avenue.[7]  She then called another officer.[8]  Lieutenant Hopkins, Deputy Inspector Gulotta, and approximately thirty additional officers responded to the address.[9]  Deputy Inspector Gulotta believed that there had been a history of parties at the location and incorrectly believed that a rape had been committed there several weeks earlier.[10]

The officers observed that the first-floor windows were blocked and that there was a real estate sign in the front of the property, which was surrounded by a waist-high steel fence.[11]

---

[5]

DI 21 ¶¶ 4-5; DI 19, Ex. B at 29:13-23, 31:24-38:19, 43:9-13 (Caesar Dep.).

[6]

DI 21 ¶ 5; DI 19, Ex. B at 44:9-14 (Caesar Dep.).

[7]

DI 21 ¶ 7; DI 19, Ex. B at 29:13-30:9, 50:23-51:11, 53:15-19 (Caesar Dep.).

[8]

DI 21 ¶ 7; DI 19, Ex. B at 55:7-12 (Caesar Dep.).

[9]

DI 21 ¶¶ 8-9; DI 19, Ex. E at 28:14-31:16 (Hopkins Dep.), Ex. F at 44:13-46:6 (Gulotta Dep.).

[10]

DI 21 ¶¶ 43, 45; DI 19, Ex. F at 36:10-23, 37:6-21, 38:2-11, 39:17-40:6 (Gulotta Dep.).

Plaintiffs object that "Captain Gulotta's . . . understanding that parties had been held at the location previously [is] hearsay." Pls' Response to Defs' Rule 56.1 Statement [DI 32] ¶¶ 43, 45. The objection is overruled.  The testimony is being introduced to show Deputy Inspector Gulotta's state of mind, not for the truth of the matter.  *See Tuccio v. Papstein*, 307 F. App'x 545, 546 (2d Cir. 2009).

[11]

DI 21 ¶¶ 10-13, 17; DI 19, Ex. C at 42:2-43:1 (M. Mitchell Dep.), Ex. D at 35:20-36:15 (H. Mitchell Dep.), Ex. F at 81:7-16 (Gulotta Dep.), Ex. G at 44:21-47:3 (Moscato Dep.).

They attempted to enter the house but found that the front door was locked.[12]  Lieutenant Caesar then

attempted to enter the building through the back door and found that it was "blocked, like [by]

something heavy against the door."[13]  She and other officers ultimately were able to push the door

open.[14]

Upon entering, they discovered that a party was taking place inside[15] with between

40 and 60 people in attendance.[16]  The party included disco lights, a bar, a DJ and DJ booth, a

television, and some couches.[17]  Detective Inspector Gulotta smelled a strong odor of marijuana,[18]

and Office Schuessler observed six to eight "nickel" or "dime" bags on the floor containing what

appeared to be marijuana and crack cocaine.[19]

Deputy Inspector Gulotta and Lieutenant Caesar believed that the house had been

---

[12]
    DI 21 ¶¶ 15-16; DI 19, Ex. H at 22:25-25:3 (Schuessler Dep.).

[13]
    DI 21 ¶¶ 16, 20; DI 19, Ex. B at 78:20-79:9 (Caesar Dep.).

[14]
    DI 21 ¶ 20; DI 19, Ex. B at 79:13-17 (Caesar Dep.).

[15]
    DI 21 ¶ 22; DI 19, Ex. F at 50:18-51:7 (Gulotta Dep.).

[16]
    Pls' Rule 56.1 Statement [DI 24] ¶¶ 19-20; DI 25, Ex. 2 at 57:22-58:4 (H. Mitchell Dep.),
Ex. 4 at 1.

[17]
    DI 21 ¶ 23; DI 19, Ex. F at 50:18-51:7 (Gulotta Dep.), Ex. C at 48:3-13 (M. Mitchell Dep.),
Ex. D at 39:18-40:23 (H. Mitchell Dep.).

[18]
    DI 21 ¶ 22; DI 19, Ex. F at 50:18-51:7 (Gulotta Dep.).  Officer Peterson, however, did not
recall smelling marijuana in the house.  DI 25, Ex. 25 at 152:5-10 (Peterson Dep.).

[19]
    DI 21 ¶¶ 36-37; DI 25, Ex. 15 at 91:12-94:4 (Schuessler Dep.).

    The police later recovered nine bags of "vegetative matter," one cigarette of "vegetative
matter," and one bag containing a "solid substance."  DI 21 ¶ 47; DI 19, Ex. I, J.

4

abandoned by its owner.[20]  There were portable heaters throughout and extension cords that ran to a neighbor's garage.[21]  When asked, nobody in attendance could or would identify the party's host.[22]  Plaintiffs testified that attendees responded "we didn't do anything, we don't know who the person is."[23]  Melinda and Harvey Mitchell stated during their depositions that they had learned of the party through various DJs and believed they were permitted to be there, but they did not know who owned the house or who was hosting the party.[24]

         After the party's attendees failed to identify who was hosting the party or owned the house, Deputy Inspector Gulotta decided to arrest everyone inside.[25]  Melinda Mitchell then was arrested and handcuffed by an officer who allegedly refused to loosen her handcuffs after she complained that they were too tight.[26]  She remained handcuffed for approximately one hour, which

---

[20]  DI 21 ¶¶ 5, 29, 34; DI 19, Ex. B at 29:13-23, 31:19-38:19 (Caesar Dep.), Ex. F at 139:20-140:19 (Gulotta Dep.).  Melinda Mitchell testified also that it didn't appear that anyone lived in the house.  DI 21 ¶ 30; DI 19, Ex. C at 52:17-53:12 (M. Mitchell Dep.).

[21]  DI 21 ¶¶ 32-33; DI 19, Ex. C at 59:19-60:4 (M. Mitchell Dep.), Ex. F at 65:3-8 (Gulotta Dep.), Ex. H. at 39:9-41:10 (Schuessler Dep.).

[22]  DI 21 ¶¶ 38-41; DI 19, Ex. C at 66:3-17, 68:9-20 (M. Mitchell Dep.), Ex. D at 63:20-64:11, 67:22-68:7 (H. Mitchell Dep.), Ex. F at 50:18-51:11, 139:20-140:21 (Gulotta Dep.).

[23]  DI 24 ¶ 26; DI 25, Ex. 1 at 68:21-69:6 (M. Mitchell Dep.), Ex. 2 at 64:1-65:13 (H. Mitchell Dep.).

[24]  DI 25, Ex. 1 at 23:10-17, 57:9-57:18, 66:9-12, 68:9-17 (M. Mitchell Dep.), Ex. 2 at 30:10-14, 46:2-10, 49:11-17, 64:1-19 (H. Mitchell Dep.).

[25]  DI 21 ¶ 46; DI 19, Ex. F at 57:14-58:5, 153:14-17 (Gulotta Dep.).  Lieutenant Caesar testified that Detective Gulotta consulted with the other officers and then decided to arrest all of those present at the party.  *Id.* Ex. B at 88:13-18 (Caesar Dep.).

[26]  DI 21 ¶¶ 48-49; DI 19, Ex. C at 74:7-78:2 (M. Mitchell Dep.).

5

allegedly caused bruising on her wrist, several days' soreness, and necessitated treatment with ice packs and six Advil over two days.[27]   Harvey Mitchell was arrested and handcuffed for 20-30 minutes, which left marks on his arms and caused him two to three hours of pain.[28]

Melinda Mitchell was released with a desk appearance ticket requiring her to appear in court approximately one month later.   The Kings County District Attorney's Office ultimately elected not to prosecute.[29]   Harvey Mitchell accepted an adjournment in contemplation of dismissal on April 12, 2011.[30]

*Discussion*

I.     *The Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[31]   Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.[32]   In that event, the

---

[27]

        DI 21 ¶¶ 51-52, 54; DI 19, Ex. C at 82:25-83:3, 87:24-92:7 (M. Mitchell Dep.).

[28]

        DI 24 ¶¶ 68-70; DI 19, Ex. D at 76:13-78:11 (H. Mitchell Dep.).

[29]

        DI 21 ¶¶ 62-64; DI 25, Ex. 1 at 98:19-99:14 (M. Mitchell Dep.), Ex. 6.

[30]

        DI 21 ¶ 65; DI 19, Ex. L.

[31]

        *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *see also* FED. R. CIV. P. 56(c).

[32]

        *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

6

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[33]   "Evidence presented by the nonmoving party [that] is merely colorable, or is not significantly probative . . . or [] is based purely on conjecture or surmise" will not defeat summary judgment.[34]

There is another factor relevant to the proper disposition of this motion.  Local Civil Rule 56.1 of this Court provides in relevant part as follows:

> "(a) Upon any motion for summary judgment . . . , there shall be annexed to the notice of  motion a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion."

> "(b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."

> "(c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."

> "(d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).."

The purpose of the rule "is to assist the Court in understanding the scope of the

---

[33]

See. e.g., *Nora Beverages. Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123–24 (2d Cir. 2001); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65–66 (2d Cir. 1997).

[34]

*Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2013) (citations and quotation marks omitted).

summary judgment motion by highlighting those facts which the parties contend are in dispute."[35] In order for a Rule 56.1 statement in opposition to a motion for summary judgment to serve this purpose, it must respond appropriately to the movant's statement. Thus, "[a] proper Rule 56.1 statement submitted by a non-movant should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint."[36]  It must cite admissible evidence in support of the non-movant's contention creates a genuine issue for trial[37] or, where the non-movant contends that further discovery is required to enable it to raise a genuine issue with admissible evidence, must be accompanied by a Rule 56(d) affidavit that demonstrates such a need with respect to each relevant averment in the movant's Rule 56.1 Statement.

        In this case, both sides have submitted Rule 56.1 Statements and responses.  The material facts substantially are uncontested.  To the extent that plaintiffs object to defendants' material facts relied upon by this Court, their objections have been addressed explicitly above or are insufficient because they are premised on grounds of "materiality" rather than accuracy, admissibility, or some other appropriate basis.[38]

---

[35]

     *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 317 (S.D.N.Y. 2003) (citing *Rodriguez v. Schneider*, No. 95 Civ. 4083(RPP), 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999)).  *Accord, e.g.*, *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577(LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002); *Fernandez v. DeLeno*, 71 F. Supp. 2d 224, 227-28 (S.D.N.Y. 1999).

[36]

     *Archie Comic*, 258 F. Supp. 2d at 317-18 (citation omitted).

[37]

     *Id.*

[38]

     *E.g.*, Pl. Resp. to Def. 56.1 Statement [DI 32] ¶ 29 ("Objection.  Captain Gulotta's conclusory statement that 2142 Atlantic Avenue appeared uninhabited to him is immaterial . . . ."); ¶ 33 ("Admit that Police Officer Schuessler has so testified concerning a power cord running out the back door into a neighboring garage.  Objection, as this fact is immaterial, as there is no indication that any of the party guests had access to, or were in, the backyard

II.     *False Arrest*

To prevail on a claim for false arrest under Section 1983, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff]; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."[39]  Confinement is "privileged" where the police have probable cause to arrest.[40]  An officer has probable cause to arrest where he or she "has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."[41]  The arresting officer's subjective motivation for the arrest is immaterial as long as there is probable cause to arrest the suspect for some crime.[42]  One officer's knowledge is imputed to all other officers involved in an investigation,[43] and a later determination that an arresting officer relied upon mistaken information is immaterial as long as the officer reasonably relied on it at the time of arrest.[44]  A court may determine that probable cause existed as a matter of law where "there is no dispute as to the pertinent events and the knowledge of the

---

at any point.").

[39]     *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

[40]     *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999).

[41]     *Singer*, 63 F.3d at 119 (citation and internal quotations omitted).

[42]     *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

[43]     *De Michele v. City of New York*, 09 Civ. 9334 (PGG), 2012 WL 4354763, at *7 (S.D.N.Y. Sept. 24, 2012) (citing *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001)).

[44]     *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994).

officers."[45]

Defendants argue that they had probable cause to arrest plaintiffs for criminal trespass in the second degree, trespass, loitering in the first degree, criminal possession of a controlled substance in the seventh degree, and unlawful possession of marijuana.  Because the Court concludes that the undisputed facts show that the police had probable cause to arrest the plaintiffs for trespass, it does not consider the other proffered justifications.

"A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."[46]  An individual has license and privilege to be at a premises which is "open to the public" " unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person."[47]  Extrapolating from the factors that a jury might consider in determining whether premises are "open to the public" in a trespass or burglary prosecution, an arresting officer making the same determination in the field should take into account:

> "the type of building involved; who owned the building; whether such ownership was posted or advertised; the physical condition and general appearance of the building; the purpose, if any, for which it was being used; whether members of the public were expressly or impliedly invited to enter; whether the public moved freely in and out of the building; whether doors and windows of the building were intact and were closed, locked or blocked; and whether any warning signs were conspicuously posted; as well as any other evidence which might have some bearing on their determination in this regard."[48]

---

[45]

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

[46]

N.Y. PENAL LAW § 140.05 (McKinney).

[47]

*Id.* § 140.00.

[48]

*People v. Taylor*, 114 Misc. 2d 680, 683-84, 452 N.Y.S.2d 526, 528-29 (Sup. Ct. 1982); *see generally Harris v. Phillips*, 05 Civ. 2870 (RRM), 2013 WL 1290790, at *10 (E.D.N.Y. Mar. 28, 2013).

A person is licensed and privileged to enter private property where "he has obtained the consent of the owner or another whose relationship to the premises gives him authority to issue such consent."[49]  One who "honestly believes that he is licensed or privileged to enter, is not guilty of any degree of criminal trespass."[50]

Relevant here is not whether the plaintiffs in fact knowingly entered or remained unlawfully at 2142 Atlantic Avenue, but whether the police had probable cause to believe that they had done so.  In other words, probable cause is established and summary judgment for the defendants is warranted if there is no dispute as to the relevant events and that the police had knowledge "sufficient to warrant a person of reasonable caution" to believe that the arrestees committed trespass.[51]

The undisputed evidence demonstrates that the police were reasonable in believing that 2142 Atlantic Avenue was not "open to the public."  The house at that address was a private residence, not a store, park, or other obviously public facility.  When the police arrived, they encountered a locked front door, a barricaded back door, and observed blacked out windows.  From the police's perspective, there was a clear intention on the part of those inside to keep others – *i.e.*, members of the public – out of the house.  Such behavior is uncommon in public spaces.  That the police had concluded that the structure was an abandoned house based on information gleaned several weeks earlier when they investigated an incident there further provided them with a basis to believe

---

[49]

     *People v. Graves*, 76 N.Y.2d 16, 20 (1990).

[50]

     *People v. Basch*, 36 N.Y.2d 154, 159 (1975).

[51]

     *Singer*, 63 F.3d at 119.

that the property was not open to the public.[52]

For many of the same reasons and several more, the police were reasonable in believing that those inside the house did not have license or privilege to be there.  Most compelling is that no one inside would or could answer when asked who owned the apartment and who was throwing the party.  In the face of such answers, and taking into account the portable heaters and extension cords that ran through the house and to a neighbor's garage, the police possessed sufficient reliable facts to conclude that the house had been abandoned and that those inside were using it as a party venue without the legal owner's knowledge or permission.[53]

This is not to say that any or all of the arrestees would have been convicted on these facts if charged with trespass.  But police are not expected to "sit as prosecutor, judge, or jury"[54] or to "explore and eliminate every theoretically plausible claim of innocence before making an arrest."[55] "Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence."[56]

---

[52]

The front door was locked and the back door was closed but unlocked when Lieutenant Caesar entered the house in or about December 2010.  DI 19, Ex. B at 32:23-36:14 (Caesar Dep.).

[53]

*Cf. Davis v. City of New York*, 373 F. Supp. 2d 322, 332-33 (S.D.N.Y. 2005) (holding that the police had probable cause to arrest plaintiffs for trespass where they were found on the roof of a building with no apparent commercial or residential use and there was no evidence or claim by the plaintiffs that they had license or privilege to be there).

[54]

*Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

[55]

*Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000).

[56]

*Krause*, 887 F.2d at 372.

Even if the Court were to have determined that there was not probable cause to arrest, there certainly was arguable probable cause sufficient to find that the officers are entitled to

*III.     Malicious Prosecution*[57]

To prevail on a claim of malicious prosecution, a plaintiff must demonstrate (1) the initiation or continuation of a criminal proceeding against them; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.[58]   When raised as a Section 1983 claim, a plaintiff must demonstrate also "a seizure or other 'perversion of proper legal procedures' implicating the plaintiff's personal liberty and privacy interests under the Fourth Amendment."[59]

Defendants argue that Melinda Mitchell's malicious prosecution claim must fail because issuance of a desk appearance ticket does not give rise to such a claim under state or federal law.  The law in this area is somewhat unsettled.   Relying on *Rosario v. Amalgamated Ladies' Garment Cutters' Union*,[60] this Court held previously that issuance of a desk appearance ticket could support a malicious prosecution claim.[61]   Although *Rosario* remains good law, two more recent Second Circuit decisions cast doubt on whether a Section 1983 claim for malicious prosecution can

---

qualified immunity.  *See Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001).

[57]    Only Melinda Mitchell asserts a claim for malicious prosecution.

[58]    *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

[59]    *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (citation omitted); *Garrett v. Port Auth. of New York & New Jersey*, 04 Civ. 7368 (DC), 2006 WL 2266298, at *6 (S.D.N.Y. Aug. 8, 2006).

[60]    605 F.2d 1228 (2d Cir. 1979).

[61]    *Lopez v. City of New York*, 901 F. Supp. 684, 688 (S.D.N.Y. 1995).

lie under these facts.  *Singer v. Fulton County Sheriff*[62] drew a bright line, declaring that "[t]ypically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest . . . while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty."[63]  Such a rule would affect both state law malicious prosecution claims and claims under Section 1983.  The court there, however, did not consider a situation in which the plaintiff was subjected to some official action – such as receipt of a summons or desk appearance ticket – between arrest and arraignment, as is the case here.

More on point is *Burg v. Gosselin*,[64] which held that a summons that did not restrict the suspect's travel and required a single court appearance did not effect a seizure for Fourth Amendment purposes.[65]  Courts in this district similarly have held that "[a] charge and a warrantless arrest – concluding with the issuance of the desk appearance ticket – may be a sufficient deprivation of liberty to support a claim for false arrest, but do not amount to a prosecution and cannot alone support a claim for malicious prosecution."[66]

Melinda Mitchell has failed to allege facts or adduce any evidence demonstrating that she was seized, for Fourth Amendment purposes, under *Burg*.  Her only claim is that the police issued

---

[62]

63 F.3d 110 (2d Cir. 1995).

[63]

*Id.* at 117.

[64]

591 F.3d 95 (2d Cir. 2010).

[65]

*Id.* at 98, 101 ("We therefore are joining a consensus of appellate courts in holding that a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure.").

[66]

*Garrett*, 2006 WL 2266298, at *7; *Katzez*, 2000 WL 23229, at *4.

14

her a desk appearance ticket requiring her presence in court a single time.  She does not claim and has not shown that her travel was restricted or that she was required to appear in court multiple times. *Burg* therefore is squarely on point.

## IV.    *Abuse of Process*

Plaintiffs' abuse of process claim entirely is baseless.  They argue that the police arrested the party's attendees in "retaliation" for their failure to answer who owned the apartment or hosted the party.  But no reasonable jury possibly could view as retaliation a police officer electing to arrest someone who to all appearances is trespassing and refuses to explain how or why he in fact is not trespassing.

## V.    *Excessive Force*

Plaintiffs next argue that the officers used excessive force in applying handcuffs.

In determining such a claim, courts consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists."[67] To prevail on a claim of excessive force, a plaintiff must demonstrate that the handcuffing "cause[d] some injury beyond temporary discomfort."[68]  Section

---

[67]     *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)).

[68]     *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008); *see also Faruki v. City of New York*, 10 Civ. 9614 (LAP), 2012 WL 1085533, at *6 (S.D.N.Y. Mar. 30, 2012) ("Minor injuries from tight handcuffs are insufficient to support an excessive force claim under the Fourth Amendment. Plaintiff has alleged bruising of the wrists, and the photograph of her wrists taken after her arrest shows some redness and possibly swelling, but these injuries were healing two weeks after the arrest at the time of her second visit to Dr. Zola and are insufficient to support a constitutional violation."); *Smith v. City of New*

15

1983 excessive force claims routinely are dismissed where the plaintiffs claim similar or even greater injury than Melinda and Harvey Mitchell claim here.  Plaintiffs, however, point to a recent decision in which a court in this district denied a motion to dismiss an excessive force claim, reasoning that "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."[69]

The holding in *Hershey* has no bearing on this case.  The court there denied the motion to dismiss because the plaintiff alleged that the handcuffing caused him to suffer paresthesia in his hands, which prevented him from engaging in leafleting activities for three weeks.[70]  Harvey Mitchell claims that he was handcuffed for approximately 20-30 minutes and suffered pain for several hours. Melinda Mitchell claims that she was handcuffed for approximately one hour and suffered pain and bruising for approximately two days.  Neither even alleges that the effects of the handcuffing limited their ability to engage in day-to-day activities, caused severe pain, long-term damage, or anything approximating the level required to defeat defendants' motion for summary judgment.[71]

---

*York*, 04 Civ. 3286 (TPG), 2010 WL 3397683, at *2 (S.D.N.Y. Aug. 27, 2010) ("Plaintiff's only alleged injury from the handcuffing is what he described as 'red rings' around his wrists once the handcuffs were removed, lasting less than a day."); *Vogeler v. Colbath*, 04 CIV. 6071(LMS), 2005 WL 2482549, at *10 (S.D.N.Y. Oct. 6, 2005) ("the Plaintiffs' mere claims of minor discomfort do not establish a triable issue that can withstand Defendant's motion for summary judgment"); *Rincon v. City of New York*, No. 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) ("Aside from the swelling in her wrist, Plaintiff does not allege that Defendants caused any other injuries. Plaintiff's allegations are *de minimus* and simply do not amount to a constitutional violation.").

[69]

*Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013) (quoting *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987)).

[70]

*Id.*

[71]

Defendants additionally are entitled to qualified immunity for their actions in handcuffing plaintiffs because it was and is not clearly established law that the officers used excessive force under the circumstances.  *See Beckles v. City of New York*, 492 F. App'x 181, 182-83

*VI.      Municipal Liability*

Having held that plaintiffs have failed to adduce facts supporting a constitutional claim, plaintiffs' claim of municipal liability must fail under the rule announced in *Monell*.[72]  Even if this were not so, plaintiffs have put forth no proof that any of the alleged violations in this case were part of a broader city policy.  They point only to other instances in which the police have arrested large groups of people – almost all of which occurred in the context of protests, not a party. This plainly is insufficient.


*Conclusion*

For the foregoing reasons, plaintiffs' motion for partial summary judgment [DI 22] is denied.  Defendants' motion for summary judgment [DI 18]  dismissing the action is granted.


SO ORDERED.

Dated:        February 11, 2014

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

_____

(2d Cir. 2012).

[72]    *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ("[N]either *Monell v. New York City Dept. of Social Services* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.").