UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MELINDA MITCHELL and HARVEY MITCHELL,
individually, and on behalf of a class of all others
similarly situated,

                      Plaintiffs,

      -against-                                  12 Civ. 2674 (LAK)

THE CITY OF NEW YORK, etc., et al.,

                      Defendants.
------------------------------------------------------------x

## MEMORANDUM OPINION

Appearances:

    Jeffrey Adam Rothman
    Jonathan C. Moore
    Jennifer Rolnick Borchetta
    BELDOCK LEVINE & HOFFMAN LLP

*Attorneys for Plaintiffs*

    Brian Christopher Francolla
    Erica Michelle Haber
    NEW YORK CITY LAW DEPARTMENT

*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        The matter is before the Court on defendants' renewed motion for summary judgment and plaintiffs' renewed motion for partial summary judgment. For the reasons stated below, defendants' motion is granted and plaintiffs' motion is denied.

*Background*

*Prior Proceedings*

This putative class action lawsuit against the City of New York and certain named and unnamed police officers asserts claims under Section 1983 for false arrest, malicious prosecution, abuse of process, excessive use of force, and municipal liability as well as parallel claims under state law.

Defendants previously moved for summary judgment dismissing the complaint.[1] Plaintiffs cross-moved for partial summary judgment on their false arrest and state law battery claims.[2] In a memorandum opinion dated February 11, 2014, this Court granted defendants' motion, denied plaintiffs' motion, and dismissed the action.[3] While the Court ruled on all of plaintiffs' claims, what remains relevant is only its holding that the officer defendants had probable cause to arrest the plaintiffs for trespass[4] and, in any case, that they were entitled to qualified immunity on the basis of arguable probable cause.[5]

The Second Circuit affirmed in all respects save one – it reversed and remanded as

---

[1] DI 18.

[2] DI 22.

[3] *Mitchell v. City of New York*, No. 12 Civ. 2674 (LAK), 2014 WL 535046 (S.D.N.Y. Feb. 11, 2014).

[4] *Id.* at *3-*5.

[5] *Id.* at *5 n.56.

2

to the false arrest claim, concluding that there was a genuine issue of material fact as to whether the officers reasonably could have believed that plaintiffs were trespassers and thus that there was probable cause to arrest.[6] It left open the question of whether the officers were entitled to qualified immunity with respect to the false arrest claim. The Court now considers the parties' renewed motions for summary judgment and partial summary judgment as to the false arrest claim.

*Facts*

The Court set forth the facts in its earlier memorandum opinion:

"In or about December 2010, Lieutenant Caesar of the New York City Police Department responded to an incident at 2142 Atlantic Avenue in Brooklyn. On that occasion, she discovered that the premises at the location appeared abandoned, having little inside other than a bar and a 'dance pole area.' Police subsequently made it a point to drive past the house.

"At approximately 2:15 a.m. on January 9, 2011, about one month later, Lieutenant Caesar observed three individuals standing on the porch at 2142 Atlantic Avenue. She then called another officer. Lieutenant Hopkins, Deputy Inspector Gulotta, and approximately thirty additional officers responded to the address. Deputy Inspector Gulotta believed that there had been a history of parties at the location and incorrectly believed that a rape had been committed there several weeks earlier.

"The officers observed that the first-floor windows were blocked and that there was a real estate sign in the front of the property, which was surrounded by a waist-high steel fence. They attempted to enter the house but found that the front door was locked. Lieutenant Caesar then attempted to enter the building through the back door and found that it was 'blocked, like [by] something heavy against the door.' She and other officers ultimately were able to push the door open.

"Upon entering, they discovered that a party was taking place inside with between 40 and 60 people in attendance. The party included disco lights, a bar, a DJ and DJ booth, a television, and some couches. Detective Inspector Gulotta smelled a strong odor of marijuana, and Office Schuessler observed six to eight 'nickel' or

---

[6] *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016).

3

'dime' bags on the floor containing what appeared to be marijuana and crack cocaine.

"Deputy Inspector Gulotta and Lieutenant Caesar believed that the house had been abandoned by its owner. There were portable heaters throughout and extension cords that ran to a neighbor's garage. When asked, nobody in attendance could or would identify the party's host.[7] Plaintiffs testified that attendees responded 'we didn't do anything, we don't know who the person is.' Melinda and Harvey Mitchell stated during their depositions that they had learned of the party through various DJs and believed they were permitted to be there, but they did not know who owned the house or who was hosting the party.

"After the party's attendees failed to identify who was hosting the party or owned the house, Deputy Inspector Gulotta decided to arrest everyone inside."[8]

*Discussion*

*Probable Cause*

The Second Circuit previously decided that there is an issue of fact as to the existence of probable cause to arrest. In ordinary circumstances, the mandate rule would foreclose this Court from reexamining that issue.[9] Nevertheless, the Supreme Court's recent decision in *District of Columbia v. Wesby*[10] arguably effected a dramatic change in law such that this Court may reconsider

---

[7] Deputy Inspector Gulotta asked also whether anyone in attendance knew who owned the building, but no one answered. DI 21, ¶ 41.

[8] *Mitchell*, 2014 WL 535046, at *1-*2.

[9] *See, e.g., Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) ("'Under the law-of-the-case doctrine, where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.'" (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)).

[10] *District of Columbia v. Wesby*, No. 15-1485 (Jan. 22, 2018).

that issue.[11]

In *Wesby*, the Supreme Court's determination that there was probable cause to arrest was made on similar facts.[12] Nonetheless, plaintiffs point to several factual distinctions between the two cases,[13] and the probable cause question often can be fact intensive. In the circumstances, the Court assumes without deciding that the officers lacked probable cause and proceeds directly to qualified immunity.

*Qualified Immunity Standard*

"A police officer is entitled to qualified immunity from liability for his discretionary

---

[11]

See *Brown v. City of Syracuse*, 673 F.3d 141, 148-49 (2d Cir. 2012) (concluding that a "definitive alteration in controlling state law" permitted reexamination of evidentiary issue by district court on remand); *see also N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) ("[A] court may depart from the law of the case where a fundamental change in the governing law impacts directly upon the parties' rights and obligations. We have also held, however, that the law of the case should be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." (quotations omitted)); 18B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 4478.3, at 746 (2d ed. 2017) ("If final judgment has not yet been entered, a compelling showing may justify departure from the mandate. The most likely justification arises when events outside the particular action establish a clear change in controlling law."); *cf. Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.3d 944, 951 (2d Cir. 1964) ("[I]f, before a case in a district court has proceeded to final judgment, a decision of the Supreme Court demonstrates that a ruling on which the judgment would depend was in error, no principle of 'the law of the case' would warrant a failure on our part to correct the ruling."). *But see Higgins v. Cal. Prune & Apricot Grower, Inc.*, 8 F.3d 896, 897 (2d Cir. 1924) (finding that the Court of Appeals is "free to reconsider [its] earlier decision" to "follow the later decision of the Supreme Court," but concluding that district court "rightly" "declined to consider the effect of that [Supreme Court] decision" given that it was bound by the mandate of the Court of Appeals).

[12]

*Wesby*, No. 15-1485, slip op. at 7-13.

[13]

DI 55.

5

actions if either (1) his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'[14] or (2) it was '"objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.'"[15] Under the second prong of the qualified immunity analysis, an officer "will still be entitled to qualified immunity [with respect to a false arrest claim] . . . if he can establish that there was 'arguable probable cause' to arrest."[16] "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."[17] This standard is "more favorable" to police officers than the one for probable cause.[18] As the Second Circuit has stated:

> "'[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.'"[19] Even on summary judgment, where all facts must be viewed in the light most favorable to the non-moving party, for the purpose of qualified immunity and arguable probable

---

[14] *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[15] *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).

[16] *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

[17] *Id.* (internal quotation marks omitted) (quoting *Escalera*, 361 F.3d at 743); *see also Wesby*, No. 15-1485, slip op. at 16 ("[O]fficers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

[18] *Escalera*, 361 F.3d at 743.

[19] *Cerrone*, 246 F.3d at 203 (quoting *Anderson*, 483 U.S. at 641).

cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences.[20] A 'police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.' Nor is a police officer required to 'sit as prosecutor, judge, or jury' in making a probable cause determination."[21]

*Arguable Probable Cause*

Under New York law, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."[22] Here, the officers entered a house which they believed to have been abandoned based on prior experiences surveying the house. On the day of the party, there were several signs that the house in fact had been abandoned, including that the party goers were using portable heaters and running extension cords out the back door and across the back yard into the garage of a neighboring property. Moreover, the people in the house turned the music off and tried to run away as soon as the officers arrived, and nobody responded when Deputy Inspector Gulotta asked those present whether they knew who owned the property or who had thrown the party. Thus, the officers had reason to believe that those present knew that they were not lawfully on the premises.

The Supreme Court recently considered similar facts in *Wesby*. The police officers there responded to a complaint at a house that they believed was vacant. When the officers arrived, they found "a makeshift strip club" in the living room of the house. The party goers stated they had been invited to the house, and a couple of individuals told the officers that someone named

---

[20] *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

[21] *Id.* (quoting *Martinez v. Simonetti*, 202 F.3d 625, 635-36 (2d Cir. 2000)).

[22] N.Y. PENAL LAW § 140.05.

7

"Peaches" had thrown the party. When the officers reached Peaches on a mobile phone, she initially told the officers that she was renting the house, but then admitted that she did not have permission to use the house. The officers then contacted the owner of the property, who confirmed that Peaches did not have permission to be in the house. The officers thereupon arrested all twenty-one party goers for unlawful entry.[23] Similar to trespass under New York law, unlawful entry under District of Columbia law requires a finding that the alleged intruder knew or should have known, upon entry, that such entry was against the will of the owner. The lower courts had held that the officers were not entitled to qualified immunity because they had had no evidence to controvert the notion that Peaches had invited the party goers to the house, which in turn would have vitiated the necessary element that the party goers knew or should have known that their entry was unlawful.

The Supreme Court reversed and unanimously held that the officers were entitled to qualified immunity in respect of the arrests of all of the party goers.[24] It pointed to the facts that the officers confronted upon arriving at the house, including that there were people at a house that the officers believed, and that appeared that day, to be vacant, that the people in the house ran away when the officers entered the house, and that their explanations for being at the house were inconsistent and replete with holes. Moreover, the source of their alleged invitation to the house actually had no right to be in the house.[25]

The circumstances of this case weigh even more heavily in the officers' favor because

---

[23] *Wesby*, No. 15-1485, slip op. at 2-3.

[24] *Id.* at 15-19.

[25] *Id.* at 15-16.

8

none of the party goers identified the owner of the house or the host of the party. Plaintiffs' argument that qualified immunity must be denied because of Deputy Inspector Gulotta's "admission that he would have released the party goers if they had answered his questions as to his satisfaction as to who owned the property and who was running the party, and that he relied on the fact that he did not get an answer to his questions in deciding to arrest them all" is unpersuasive. The officers had no evidence that plaintiffs were lawfully in the house, and the officers were faced with a collection of suspect circumstances. It is no leap to conclude that the officers reasonably could have believed that the guests knew that they were not supposed to be in the house. The officers thus had arguable probable cause to arrest plaintiffs for trespass. Accordingly, the Court holds that the officer defendants are entitled to qualified immunity in respect of plaintiffs' claims for false arrest.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgement dismissing the complaint is granted and plaintiffs' motion for partial summary judgment is denied.

SO ORDERED.

Dated: January 31, 2018

_____
Lewis A. Kaplan
United States District Judge